THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NESTOR MATZKE, Defendant-Appellant.

First District (3rd Division)    No. 79-2178

Opinion filed December 23, 1981.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Stein, and Bruce Rose, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Defendant, on June 2, 1979, killed Magdie Noush, age 14, by recklessly firing his .38-caliber pistol. In a bench trial he was found guilty of armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2) and involuntary manslaughter (Ill. Rev. Stat. 1979, ch. 38, par. 9—3(a)) and was sentenced to a term of 6 years on the armed violence charge. No sentence was imposed on the manslaughter count, in the words of the order of sentence and commitment, "since this count would merge with the sentence on armed violence." In further explanation of his order the trial judge said:

> "The Court does have some concerns about subjecting a person to be twice penalized for the same offense, however the Statute does not require that the person be twice penalized for the same act. Indeed, this Court is mindful that the Appellate Courts have held that it is improper for the person to be sentenced for both the offense of armed violence and the other offense for which armed violence—on which armed violence, rather, is predicated. However, the facts of this case establish that the defendant is guilty of the charge of armed violence as set forth in the Statute beyond a reasonable doubt. And the Court finds the defendant to be guilty of the charge of armed violence.
>
> Judgment will be entered on the finding of armed violence."

The questions raised by this appeal are: (1) does the armed violence statute apply to unintentional criminal acts, and (2) can one recklessly fired shot support convictions of both manslaughter and armed violence.

Defendant first argues that to punish defendant under the armed violence statute for an unintentional criminal act is unfairly discriminatory, denies him equal protection and defeats the legislative intent. It is his

position that the armed violence statute should not be construed so as to apply to the crime of involuntary manslaughter. To do so, it is argued, would destroy our entire scheme of grades of homicide in which involuntary manslaughter is the least grievous. Involuntary manslaughter is a Class 3 felony (Ill. Rev. Stat. 1979, ch. 38, par. 9—3(b)(1)), for which a defendant could receive probation (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3(b)) or be sentenced to not less than 2 years and not more than 5 years (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(b)). On the other hand, armed violence committed while armed with a pistol is a Class X felony (Ill. Rev. Stat. 1979, ch. 38, par. 33A—3) for which there is no probation (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3(c)), and for which the sentence is not less than six years (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(3)). Yet the more serious intentional crime of voluntary manslaughter, a Class 2 felony, is punishable by a sentence of not less than 3 years and not more than 7 years (Ill. Rev. Stat. 1979, ch. 38, pars. 9—2(c) and 1005—8—1(5)). It is contended that to construe the armed violence statute as applying to involuntary manslaughter would violate legislative intent and leave the armed violence statute, article 33A, and article 9 (homicide) working at cross purposes. The enhanced penalty imposed under the armed violence statute, according to the defendant's brief, was intended by the legislature to apply to intentional criminal acts, but "the legislature failed to make distinctions along those lines."

■■ The first step in construing a statute is to look at the words actually used by the legislature. (*Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 194, 381 N.E.2d 222.) The words used to define armed violence are clear, direct and unambiguous:

> "§33A—2. Armed violence—Elements of the offense. A person commits armed violence when, while armed with a dangerous weapon he commits any felony defined by Illinois law." (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.)

As noted above, involuntary manslaughter is a felony. A pistol is a dangerous weapon (Ill. Rev. Stat. 1979, ch. 38, par. 33A—1). Obviously the plain words of the armed violence statute apply to involuntary manslaughter. However, defendant directs our attention to the case of *People v. Lotts* (1977), 48 Ill. App. 3d 684, 688, 362 N.E.2d 1387, in which the court stated: "Where the literal enforcement of the statute would result in great injustice and have results which the legislature could not have contemplated, this court will adopt the construction reasonably intended by the legislature." We have examined the history of the armed violence statute for some clue as to whether the legislature indeed intended to enhance the penalty for an unintentional killing with a dangerous weapon by applying the armed violence statute to involuntary manslaughter. When first enacted, the statute applied to a limited number of felonies

specifically listed, and provided for sentences of not less than 2 years nor more than the maximum sentence provided for the same felony committed while unarmed. In 1978, the Act was broadened to apply to any felony whatsoever, and armed violence made punishable as a Class X crime when committed while armed with a gun. Even a Class 4 felony becomes punishable as a crime of this highest classification when committed while armed with a gun. This is a legislative response to growing public alarm over the crimes committed with deadly weapons. It cannot be said that the armed violence act is not a rational attempt to deal with this problem. (See *People v. Cole* (1977), 47 Ill. App. 3d 775, 362 N.E.2d 432.) We fail to find the constitutional infirmities in its application to involuntary manslaughter conjured by defendant. The fact that more severe punishment has been mandated for persons who commit felonies while armed than for those who commit them unarmed is not a violation of equal protection in any way. (See *People v. Bradley* (1980), 79 Ill. 2d 410, 403 N.E.2d 1029.) Nor do we view this construction of article 33A as destructive of our historic classification of homicide. The grades of homicide based upon the defendant's state of mind remain. To them is added the factor of whether or not the defendant was armed. If so, it increases the mandated punishment. This does increase the options available to prosecutors and to courts, but that is not a violation of equal protection. *People v. Graham* (1975), 25 Ill. App. 3d 853, 323 N.E.2d 441.

■■ Looking now at the other test proposed by the *Lotts* court in interpreting a statute, does literal enforcement result in great injustice? Defendant, age 22, with an IQ of less than 75, had never been arrested before when convicted of armed violence, was not eligible for probation, and was given the minimum sentence for Class X crimes; six years. That is one more than the maximum available for involuntary manslaughter. Obviously, the judge took all of the mitigating factors into consideration when imposing sentence. The fact remains that he recklessly fired his pistol and caused the death of a 14-year-old boy. The sentence cannot be said to be a great injustice.

Defendant next contends that his convictions for both armed violence and involuntary manslaughter based on a single recklessly fired shot are improper and the conviction for the less serious offense should be vacated.

■■■ Defendant has no basis for appeal on the involuntary manslaughter count, since there was no conviction and no judgment entered on that count. The State, however, places the issues of the correctness of both convictions before us, asserting that both are proper and requesting remand of the case for entry of final judgment and sentence on the manslaughter count. (*People v. Scott* (1977), 69 Ill. 2d 85, 370 N.E.2d 540.) Under the doctrine of *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d

838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, this court has ruled that convictions of both armed violence and a supporting felony charge cannot both stand if based upon the same physical acts. (*People v. Adams* (1980), 91 Ill. App. 3d 1059, 415 N.E.2d 610; *People v. Crawford* (1980), 90 Ill. App. 3d 888, 414 N.E.2d 25.) The State argues that the test to determine where multiple convictions are permissible involves an examination of the statutes involved to determine whether each requires proof of an additional fact which the other does not. This is contrary to the test laid down in *King*.

"Prejudice results to the defendant only in those instances where more than one offense is carved from the same *physical* act." (Emphasis added.) (*People v. King* (1977), 66 Ill. 2d 551, 566.) In the recent case of *People v. Myers* (1981), 85 Ill. 2d 281, 422 N.E.2d 620, after quoting *King*, the supreme court applied this rationale by meticulously reviewing the physical facts of the case to determine if convictions of attempt murder and armed violence based on aggravated battery can both stand. Finding that there were multiple physical acts, although the movement was slight, the court ruled the multiple convictions could stand.

Here clearly a single act, the pulling of the trigger, was conduct underlying both the involuntary manslaughter and the armed violence charge. Judgments and sentences on both charges as requested by the State could not stand.

Affirmed.

RIZZI, P. J., and McNAMARA, J., concur.