THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MATTHEW TAYLOR, Defendant-Appellant.

Third District   No. 3—90—0287

Opinion filed September 6, 1991.

Stephen Omolecki, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Burmila, Jr., State's Attorney, of Joliet (John X. Breslin and Jay Paul Hoffman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Following a bench trial, the defendant, Matthew Taylor, was convicted of involuntary manslaughter (Ill. Rev. Stat. 1989, ch. 38, par. 9—3). He was subsequently sentenced to a two-year term of imprisonment. He appeals, and we reverse.

The record shows that codefendants Leon DeRouin and Kevin DeLorenzo dropped several pieces of concrete from the Stuenkel

Road overpass, one of which struck a vehicle and killed Charles Layfield. The defendant was convicted of the crime under an accountability theory.

DeLorenzo testified that on November 24, 1988, he picked up both DeRouin and the defendant. He stated that they had no destination in mind and no specific activities planned. They drove around awhile and then stopped to get something to eat. Thereafter, they went to the Stuenkel Road overpass, where the defendant got out of the car to go to the bathroom. The defendant then returned to the car and sat in the back seat. As the defendant sat there, DeLorenzo and DeRouin collected some rocks and proceeded to drop them off the overpass.

DeLorenzo also testified that he did not recall the defendant saying anything when he and DeRouin returned to the car. In addition, he stated that on a few occasions in the past when he and DeLorenzo had thrown rocks off overpasses the defendant was with them but he never participated.

DeRouin testified that he was with the defendant and DeLorenzo on November 24, 1988. They were just driving around with no destination in mind. He stated that prior to going to the Stuenkel Road overpass they went to the Harlem Road overpass, where he and DeLorenzo dropped rocks onto the highway. The defendant stayed in the car. When they left the Harlem overpass, he asked DeLorenzo where they were going, to which DeLorenzo replied, "We'll see when you get there."

DeRouin stated that they then proceeded to the Stuenkel Road overpass. Once there, the defendant got out of the car to go to the bathroom. When he returned to the car, he sat in the back seat while DeRouin and DeLorenzo dropped rocks off the overpass.

In addition, DeRouin testified that upon returning to the car the defendant asked them if they had hit anything. DeRouin noted that the next day, while driving past a viaduct, the defendant said, "This is stupid, one of these days we're going to end up hurting someone." Finally, DeRouin stated that while he, DeLorenzo, and another friend had thrown rocks from bridges on a few occasions, the defendant had thrown something only once.

Other evidence showed that the three of them got together about two to three times a week. On these occasions, they engaged in various activities, such as bowling, playing pool, or just driving around. The evidence also showed that the car in which the defendant sat was a Camaro with tinted windows.

On appeal, the defendant argues that he was not proven guilty beyond a reasonable doubt of involuntary manslaughter based on an accountability theory. Specifically, he contends that the State failed to show that he had any plan to commit the offense or that he intended to promote or facilitate the commission of the offense.

■■ To convict a person of an offense on a theory of accountability, the State must prove beyond a reasonable doubt that: (1) the defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) this participation took place either before or during the commission of the offense; and (3) the defendant had the concurrent, specific intent to promote or facilitate the commission of the offense. (*People v. Schlig* (1983), 120 Ill. App. 3d 561, 458 N.E.2d 544.) Furthermore, criminal responsibility may not be imposed simply through guilt by association, nor by the defendant's mere presence at the scene, nor even by the defendant's knowledge that the offense is being committed. *People v. Walker* (1976), 44 Ill. App. 3d 494, 358 N.E.2d 672.

Here, we find that the State failed to prove beyond a reasonable doubt that the defendant intended to promote or facilitate the commission of the offense. The evidence only established that he was present at the scene and that he associated with the perpetrators. No evidence was presented showing that he in any way aided or participated in the commission of the offense.

The State argues, however, that the defendant's guilt was established by showing he was engaged in a common criminal design. It notes that pursuant to the underlying intent of the accountability statute, if the circumstances disclose there is a common design to do an unlawful act to which all assent, the act of one is the act of all. *People v. Duncan* (1985), 133 Ill. App. 3d 489, 478 N.E.2d 1125.

At this point, we would note that all of the common design cases cited by the State involved situations where the defendant himself either actively participated in the offense or was involved in the planning process. Or they showed that the defendant was engaged with others in some sort of illegal activity prior to the group committing the offense for which he was found guilty.

■■ Here, for the State to show that the defendant was part of a group bent on illegal acts, it had to establish that he knew about the criminal scheme. The State argues that evidence of a common scheme was introduced through the testimony of DeRouin. We disagree and find that the State failed to provide sufficient evidence to

show that the defendant was engaged in a common criminal scheme.

Although DeRouin testified that they had gone to the Harlem Road overpass prior to going to Stuenkel Road, his testimony was insufficient to establish the defendant's guilt since it was contradicted by the testimony of DeLorenzo. (*People v. Newell* (1984), 103 Ill. 2d 465, 469 N.E.2d 1375 (The uncorroborated testimony of one accomplice is insufficient to prove guilt if contradicted by the testimony of another accomplice).) As such, DeRouin's uncorroborated testimony failed to show that the defendant was engaged in a criminal scheme.

In the case at hand, there appears to have been no common design to commit a criminal offense. Both codefendants testified that when they got together that evening they had no plans. They were just driving around talking and had no destination in mind. No evidence was presented showing that the defendant knew where they were going or that he knew his friends might drop rocks off an overpass.

In addition, no evidence was presented showing that this group only got together to engage in illegal activities. In fact, the evidence showed that they often got together to go bowling, go out to eat, shoot pool, or to just drive around and talk.

Therefore, considering all the evidence, we find that it was insufficient to establish beyond a reasonable doubt the defendant's accountability for the crime committed by his codefendants.

The judgment of the circuit court of Will County is reversed.

Reversed.

GORMAN and SLATER, JJ., concur.