THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD McKINNEY *et al.*, Defendants-Appellants.

First District (6th Division)    Nos. 1—92—2205, 1—92—2824 cons.

Opinion filed March 25, 1994.

540

Rita A. Fry, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Liza Siracusa, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GIANNIS delivered the opinion of the court:

Following a bench trial, defendant John Budwitis was found guilty of burglary. Following a simultaneous jury trial, defendant Ronald McKinney was also found guilty of burglary in connection with the crime. Both men were sentenced to a prison term of six years in the penitentiary. Both defendants now appeal the judgements entered against them pursuant to Illinois Supreme Court Rules 602 and 603 (134 Ill. 2d Rules 602, 603).

The State presented evidence that just before 1 a.m. on February 23, 1992, Officers Yvonne Delia and David Villalobos were traveling along 64th Street in Chicago in an unmarked police car. Officer Villalobos drove the car while Officer Delia sat in the front passenger seat. Officer Delia testified that while she and her partner were driving along she saw defendant McKinney standing by a five-foot-high fence looking back and forth. She said that McKinney was just inside the open gate of the fence. Officer Delia noticed from inside the car that a garage utility door behind McKinney was open. Officer Villalobos similarly testified that he saw defendant McKinney standing inside the fence and that the utility door was open.

As the officers exited the car to investigate, each heard defendant McKinney yell out in the direction of the garage. McKinney then began to run down a nearby alley. Officer Villalobos gave chase and eventually apprehended McKinney. Before McKinney began to run, however, both officers saw defendant Budwitis exiting the garage. Officer Delia testified that he had a small flashlight in his hand. While Officer Villalobos was chasing McKinney, Officer Delia entered the backyard and apprehended Budwitis. Officer Delia took Budwitis into custody after performing a pat-down search and taking the flashlight.

Officer Villalobos testified that following the apprehension of the defendants he entered the garage, which appeared cluttered. He stated that he saw several items of property that had been lined up at the door. He admitted, however, that these items might have been there for several weeks before the incident.

The officers testified that they went to speak with Mrs. Judy Kaminski, who owned the garage. Mrs. Kaminski testified that in the afternoon of February 22, 1992, her sister-in-law had accidentally broken off a key in the lock of the utility door which led inside the garage. Instead of replacing the lock at that time, she stated she had installed a hook and eye to the utility door and the door had been closed. She stated when the police came and woke her that evening, they took her into the garage. She then noticed that a patio-type umbrella which had been in the garage had been moved. Mrs. Kaminski also testified that she noticed several items had been moved

around when she went into the garage the next day. She stated she had not given either defendant permission to enter her property.

Following the State's case in chief, counsel for defendant Budwitis argued a motion for a directed verdict. The motion was denied. Budwitis then rested. He subsequently asked the court to reconsider his arguments made in the directed verdict in lieu of closing argument.

Defendant McKinney recalled Officer Delia as a witness. She testified that the defendants told her during questioning that they had a beer earlier that evening. Officer Delia marked on her report that defendants had been drinking and that defendant Budwitis smelled of alcohol. Defendant McKinney then rested.

Following closing argument by McKinney's counsel, the jury returned a verdict finding McKinney guilty of burglary. Thereafter, the trial court found defendant Budwitis also guilty of burglary. Both men were sentenced to a prison term of six years based upon their criminal backgrounds.

■ We first address the arguments raised by defendant Budwitis. He first claims that by refusing to announce its verdict at the close of his trial, the trial court improperly "opened itself up" to the improper influence of the jury's decision against his codefendant. He cites *People v. Schmitt* (1989), 131 Ill. 2d 128, 545 N.E.2d 665, where the supreme court indicated that the better procedure in simultaneous trials is for the trial court to make its decision regarding each defendant immediately after the close of the respective cases. See *Schmitt*, 131 Ill. 2d at 139.

As the State argues, however, defendant Budwitis has waived this issue on appeal. In order to preserve an issue for review, a defendant must make a contemporaneous trial objection and renew that objection in a written post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) In this case, when the trial court indicated that it would wait until after the jury returned with the verdict in defendant McKinney's case before announcing its decision in defendant Budwitis' case, counsel for Budwitis did not object. Indeed, Budwitis' counsel stated, "Okay, Judge, that's fine." A defendant cannot agree to a procedure before the trial court and then complain about that same procedure on appeal. See, *e.g.*, *Schmitt*, 131 Ill. 2d at 137 ("where, as here, a party acquiesces in proceeding in a given manner, he is not in a position to claim he was prejudiced thereby").

Even assuming, however, that the issue had not been waived, the substance of defendant Budwitis' complaint is without merit. The *Schmitt* case itself indicates that the trial court's failure to make an

immediate ruling at the close of a defendant's case is not in itself reversible error. While the supreme court has indicated that the better procedure is for the trial court to do so (see *Schmitt*, 131 Ill. 2d at 139), the supreme court has also expressed general confidence in the trial court's ability to compartmentalize its consideration of the evidence against each defendant. The court declared that in the absence of proof to the contrary, a reviewing court must presume that the trial court considered only competent evidence in reaching its verdict. *Schmitt*, 131 Ill. 2d at 138-39.

There is nothing in this record to indicate that the court considered anything beyond the evidence offered against defendant Budwitis in reaching its verdict against him. Indeed, the court expressly recognized the importance of considering only the evidence against defendant Budwitis in making its ruling by stating, "Mr. Budwitis, based upon the evidence which we heard *as to you* the Court finds as to you that you will \*\*\* likewise be found guilty." (Emphasis added.) Because of this, and because of the strong presumption that the trial court considered only competent evidence against defendant Budwitis, his arguments to the contrary are rejected.

■ Defendant Budwitis next argues that the court found him guilty of burglary without sufficient evidence. Section 19—1 of the Criminal Code of 1961 states:

"A person commits burglary when without authority he knowingly enters or without authority remains within a building, \*\*\* or any part thereof, with intent to commit therein a felony or theft." (720 ILCS 5/19—1 (West 1992).)

Because we conclude that the State offered sufficient evidence to prove defendant Budwitis guilty, we reject his claim.

It is well established that the standard for reviewing the sufficiency of evidence supporting a criminal conviction is whether, after considering all of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Smith* (1992), 149 Ill. 2d 558, 565, 599 N.E.2d 888; *People v. Grengler* (1993), 247 Ill. App. 3d 1006, 1011-12, 617 N.E.2d 486.) This standard is applicable in criminal cases regardless of whether the evidence is direct or circumstantial. (*People v. Campbell* (1992), 146 Ill. 2d 363, 374, 586 N.E.2d 1261; *People v. Kaminski* (1993), 246 Ill. App. 3d 77, 82, 615 N.E.2d 808.) A reviewing court will not substitute its judgment for that of the trier of fact in determining the credibility of the witnesses and the weight of the evidence. (*People v. Sutherland* (1992), 155 Ill. 2d 1, 19-20, 610 N.E.2d 1.) A criminal conviction will

be reversed only if the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Sutherland,* 155 Ill. 2d at 17.

Defendant Budwitis claims the State failed to prove he had the requisite intent when he entered the garage to be found guilty of burglary. The State is permitted, however, to prove the intent necessary in a burglary case by inferences drawn from the defendant's conduct and from surrounding circumstances. (*People v. Richardson* (1984), 104 Ill. 2d 8, 12-13, 470 N.E.2d 1024; *People v. Hopkins* (1992), 229 Ill. App. 3d 665, 672, 593 N.E.2d 1028.) "In the absence of inconsistent circumstances, proof of unlawful entry into a building which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary." (*People v. Loden* (1975), 27 Ill. App. 3d 761, 762, 327 N.E.2d 58.) Relevant considerations are the time, place, and manner of entry into the premises, the defendant's activity within the premises, and any alternative explanations which may explain his presence. *Richardson,* 104 Ill. 2d at 13.

In this case two police officers testified to witnessing defendant Budwitis coming from inside an unlit garage at 1 a.m. after a second man yelled out in his direction. One officer testified that Budwitis had a flashlight in his hand, and defendant Budwitis does not deny that he possessed a flashlight at this time. Budwitis did not have permission to be in the garage. While defendant Budwitis notes that a police report filed by Officer Delia states that Budwitis' flashlight was found "*after* a pat down" (emphasis added), the trial court considered this and determined it insufficient to raise a reasonable doubt of guilt. We see nothing improper with the trial court's conclusion.

■ Defendant Budwitis next argues that he received ineffective assistance of counsel at trial. The United States Supreme Court established a two-pronged test for determining ineffective assistance of counsel in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. In order to prevail on such a claim, defendant must prove that trial counsel's representation was deficient and prejudiced his defense to the extent that he was denied a fair trial. Prejudice is shown by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) If the ineffective assistance claim can be disposed of on the ground that defendant did not suffer sufficient prejudice, we need not determine whether counsel's errors are serious enough to constitute less than reasonably effective

assistance. *People v. Eddmonds* (1991), 143 Ill. 2d 501, 511-12, 578 N.E.2d 952.

The standard for judging the sufficiency and quality of an attorney's advocacy is tested against that of reasonably effective assistance pursuant to prevailing professional norms. (*Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65.) In order to prevail on appeal a defendant must demonstrate that his counsel made errors so grave, and that his counsel's performance was so deficient, that counsel did not function in a manner commensurate with the sixth amendment standard for legal representation. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) There is a strong presumption that the disputed action or inaction by defense counsel was merely trial strategy. (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.) A review of a lawyer's competency will not extend to the exercise of his judgment, discretion, trial tactics and trial strategy. *People v. Sowinski* (1986), 148 Ill. App. 3d 231, 246, 498 N.E.2d 650.

Defendant Budwitis bases his claim of ineffective assistance on the following: (1) his counsel's failure to object to the trial court's decision to wait until the McKinney verdict was rendered by the jury before announcing its ruling; (2) counsel's failure to present evidence to the court that items in the garage may have been moved by the officers, not his client; (3) counsel's failure to pursue questioning of Mrs. Kaminski on her ability to tell what had been moved in the garage; and (4) counsel's failure to emphasize the significance to the court of Officer Delia's police report which indicated that Budwitis did not have the flashlight in his hands when he exited the garage.

The first of these claims was discussed above. Even if it is conceded that counsel acted unprofessionally in not insisting that the court immediately announce its decision following the close of defendant Budwitis' case, this would not be sufficient to warrant a reversal of defendant's conviction under the facts presented. There is simply nothing in the record to indicate that the trial court relied in any way upon the jury's verdict in the McKinney trial in reaching its result against defendant Budwitis. Because the presumption, absent evidence to the contrary, must be that the trial court was not influenced by the jury's verdict in the McKinney trial (*Schmitt*, 131 Ill. 2d at 138-39), defendant Budwitis cannot show there to be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

With regard to defendant Budwitis' second argument, a review of the record indicates no evidence whatsoever that the officers entered

the garage without cause or moved any of the items found there. Defendant Budwitis' claim that his counsel was ineffective for not pursuing this line of questioning is without support in the record and therefore without merit.

Defendant's third ineffective assistance claim is that his counsel inappropriately failed to pursue questioning of Mrs. Kaminski regarding whether anything inside the garage had been moved. We initially note that an attorney's decision as to how or whether to cross-examine a witness is generally a matter of trial strategy which, by itself, will not support a claim of ineffective assistance. (*People v. Stewart* (1984), 104 Ill. 2d 463, 492, 473 N.E.2d 1227.) Even so, the record in this case indicates defendant Budwitis' counsel specifically questioned Mrs. Kaminski on this issue. Counsel for defendant Budwitis asked, "I believe your testimony is that none of the items in your garage were moved to where the door was, is that correct?" Mrs. Kaminski indicated that things had been moved but not to the door. Mrs. Kaminski made a similar response to questions posed by defendant McKinney. She explained that she had been in the garage that very afternoon and insisted that a garden umbrella and several other items had been moved. It thus appears counsel's decision not to more vigorously pursue questioning of Mrs. Kaminski was a matter of sound trial strategy reasonably designed to minimize damage to his client's contention that there was insufficient proof to show Budwitis had entered the garage. This is not ineffective assistance.

Even were we to conclude that counsel's failure to question Mrs. Kaminski in this area amounted to ineffective assistance, we would not find in favor of defendant Budwitis on this claim. It must be emphasized that Mrs. Kaminski's testimony was not the only testimony tending to show that defendant Budwitis had entered the garage. Both Officer Delia and Officer Villalobos testified to seeing defendant Budwitis coming from inside. After reviewing the record, we have no doubt it was the officers' direct testimony regarding seeing Budwitis coming from inside the building, and not Mrs. Kaminski's testimony regarding the fact that items inside the garage had been moved, that convinced the court Budwitis had entered the building. Counsel's failure to pursue questioning of Mrs. Kaminski on this issue did not influence the outcome of the case. See *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 697-98, 104 S. Ct. at 2068.

Finally, defendant Budwitis points to the "discrepancy" between the police report filed by Officer Delia and her trial testimony. He argues his counsel failed to "correct the trial judge's explicit misapprehension regarding [this] key exculpatory evidence." Specifically, defendant Budwitis notes the court indicated during the trial that it

believed the location of defendant Budwitis' flashlight at the time the police arrived was a "minor collateral issue" and that the exact location of the flashlight was not germane to the question of whether defendant Budwitis was engaged in a burglary at the time of his encounter with the police. Defendant's arguments are again without merit. There is nothing to indicate, as defendant Budwitis now alleges, that the trial court "missed the impeaching and substantive significance about how Officer Delia's signed police report crucially contradicted her trial testimony." Contrary to defendant's claim, the discrepancy between the police report and Officer Delia's testimony fails to establish that Officer Delia "embellished trial testimony with false incriminating detail to get a conviction." There is nothing to indicate the trial court improperly weighed this evidence and no indication that any argument from counsel might have changed the court's decision. We will not reweigh this evidence on appeal.

Because defendant Budwitis' counsel rendered effective assistance to him, his claims to the contrary are rejected and his conviction for burglary is affirmed.

■ We next address defendant McKinney's arguments. Like Budwitis, he also argues the evidence against him was insufficient to support his burglary conviction. The evidence against defendant McKinney, however, was essentially the same as the evidence against defendant Budwitis. The only question, therefore, is whether the additional fact that the two men had been drinking prior to being arrested and the fact that defendant McKinney did not enter the garage necessarily create a reasonable doubt as to McKinney's guilt.

Defendant McKinney was convicted of burglary under an accountability theory. (See 720 ILCS 5/5—2 (West 1992).) To convict a person of an offense on a theory of accountability, the State must prove beyond a reasonable doubt that: (1) the defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) this participation took place either before or during the commission of the offense; and (3) the defendant had the concurrent, specific intent to promote or facilitate the commission of the offense. (720 ILCS 5/5—2(c) (West 1992); *People v. Taylor* (1991), 219 Ill. App. 3d 47, 49, 579 N.E.2d 383.) The intent to promote or facilitate a crime can be inferred from the surrounding circumstances. (*People v. Strickland* (1993), 254 Ill. App. 3d 798, 808; *People v. J.H.* (1990), 136 Ill. 2d 1, 17, 554 N.E.2d 961.) Here the State had to prove that defendant McKinney intended to help Budwitis commit the burglary and did some act, before or during the offense, in furtherance of it.

Defendant McKinney argues that the most reasonable inference

which can be drawn from the record is that he and Budwitis stopped on Mrs. Kaminski's property to urinate after a night of drinking, not to burglarize her garage. He claims the evidence indicates that the officers mistook his nervousness in trespassing on Mrs. Kaminski's property and his waiting for Budwitis to finish as a sign that the two were burglars. He emphasizes that he was not found to have had any "burglar tools" or property taken from inside the garage. Even if it is assumed that his codefendant Budwitis entered the garage, he argues, there is no evidence to indicate he knew Budwitis had done so or that he intended to assist Budwitis in committing a theft inside.

Defendant McKinney's arguments are both factually and legally flawed. Because the officers could see the open garage door beyond the gate from their position inside their car, it is only logical to also conclude that defendant McKinney, who stood inside the five-foot-high fence, could also see the open garage door and knew that Budwitis had entered the garage. Officer Delia testified that the open door was just west of McKinney's position when the officers arrived. While defendant McKinney may not have had the necessary intent for the crime of burglary when the two men initially entered Mrs. Kaminski's property, this was no longer the case once he knew Budwitis had entered the garage and once he called out to warn Budwitis of the approach of the police. Again, the State is permitted to prove the intent necessary in a burglary case by inferences drawn from the defendant's conduct and from surrounding circumstances. (See *Richardson*, 104 Ill. 2d at 12-13; *Hopkins*, 229 Ill. App. 3d at 672.) These facts are sufficient to have led the court to conclude that defendant McKinney was assisting Budwitis in the commission of a burglary at the time the police arrived.

In addition to being factually flawed, defendant McKinney's argument that the evidence is insufficient to convict him is legally flawed because the "reasonable hypothesis of innocence" standard of review is no longer viable in Illinois. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291, 549 N.E.2d 344.) Thus, even if it were assumed that defendant McKinney could offer a reasonable alternative explanation for why he was on the property and why he yelled out to Budwitis upon the approach of the police, this fact does not require reversal of his conviction unless the evidence is shown to be so improbable or unsatisfactory that it creates a reasonable doubt of his guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) McKinney has not made such a showing.

■ Defendant McKinney's second contention is that the trial court improperly limited the scope of certain cross-examination.

Cross-examination is limited to the scope of direct examination and to matters that explain, qualify, discredit, or destroy the witness'

direct testimony. (*People v. Franklin* (1990), 135 Ill. 2d 78, 97, 552 N.E.2d 743.) The scope of cross-examination is within the sound discretion of the trial court, and a court of review should not interfere unless there has been a clear abuse of discretion resulting in manifest prejudice to the defendant. *People v. Witt* (1992), 227 Ill. App. 3d 936, 948, 592 N.E.2d 402.

The sixth amendment confrontation clause does not prevent the trial court from imposing reasonable limits on defense counsel's inquiries on cross-examination. (*People v. Harris* (1988), 123 Ill. 2d 113, 526 N.E.2d 335.) Cross-examination may be limited by the court based upon concerns such as harassment, prejudice, confusion of the issues, witness safety, relevance or repetition. (*Harris*, 123 Ill. 2d at 144.) When the trial court improperly restricts cross-examination, a defendant's conviction will be affirmed by a reviewing court when convinced beyond a reasonable doubt that defendant was not prejudiced. *People v. Rogers* (1988), 123 Ill. 2d 487, 507-08, 528 N.E.2d 667.

The record indicates the following exchange which now serves as the basis of McKinney's complaint:

"MR. HOCH [defendant McKinney's counsel]: Did anything look like it had been moved to the door, ma'am, to carry out?

MS. HUGHES [Assistant State's Attorney]: Objection.

THE COURT: Overruled, you may answer.

THE WITNESS [Mrs. Kaminski]: The biggest item was my umbrella. As I said I did have a few bushels and things that were moved out of their original place.

MR. HOCH: Did they seem to you to have been lined up to be carried out?

THE WITNESS: I don't say lined up in front of the door.

MS. HUGHES: Objection.

THE COURT: Sustained.

MR. HOCH: May I know the reason?

THE COURT: The objection is sustained; asked and answered. Pose another question.

MR. HOCH: May I have the question and answer read back, Judge?

THE COURT: No, pose another question."

Defendant McKinney is correct that the trial court improperly restricted his counsel from asking Mrs. Kaminski about whether items had been moved in such a way as to suggest that someone was about to carry them out of the garage. While Mrs. Kaminski repeatedly stated that items in the garage had been moved, she did not answer if items had been moved "to carry out." Despite this, the trial court sustained the State's objection because it believed the question had been asked and answered.

It is clear, however, that not all improper rulings by the trial court amount to reversible error. (*People v. Glover* (1988), 173 Ill. App. 3d 678, 682-83, 527 N.E.2d 968.) As already noted, the trial court's determination that defendant Budwitis entered the garage was amply supported by the testimony of both Officer Delia and Officer Villalobos and Mrs. Kaminski was emphatic in insisting that items inside the garage had been moved. Although the State was unable to establish that items inside the garage had been moved in such a way as to suggest that they were being prepared to be moved, we believe it clear beyond a reasonable doubt that the trial court's error in limiting cross-examination had no substantive effect on the result of the trial. Because a reviewing court will overturn a ruling on the scope of cross-examination only where an abuse of that discretion results in manifest prejudice to the defendant (*People v. Owens* (1984), 102 Ill. 2d 88, 103, 464 N.E.2d 261), defendant's argument is rejected.

■ Finally, defendant McKinney argues that the above-quoted colloquy demonstrates the trial court acted improperly toward his attorney by being "unhelpful and demeaning." He claims that the court's refusal to have his counsel's question read back had the effect of "mentally derailing" his attorney. He also argues that this conduct on the part of the trial court had the effect of prejudicing the jury against him and that he should be awarded a new trial.

The trial court is entrusted with the duty to see that all persons are given a fair trial. (*People v. Lewerenz* (1962), 24 Ill. 2d 295, 301, 181 N.E.2d 99.) A trial judge must take care to insure his intimations, demeanor, and comments do not prejudice those against whom they are made. (*People v. Egan* (1928), 331 Ill. 489, 493, 163 N.E. 357.) Judicial comments amount to reversible error only if a defendant can establish such comments were "a material factor in the conviction or were such that an effect on the jury's verdict was the probable result." *Harris*, 123 Ill. 2d at 137.

A review of the record indicates the trial court was at all times respectful and polite to counsel, both during proceedings before the jury and outside the jury's presence. Defendant's argument that the court was in any way abusive to him or acted to prejudice the jury against him is rejected.

For the foregoing reasons, defendants' convictions for burglary are affirmed.

Affirmed.

McNAMARA and RAKOWSKI, JJ., concur.